UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THUONG MENNELLA,

     Plaintiff,

v.                                                                Case No: 6:15-cv-148-Orl-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## ORDER

Plaintiff, Thuong Mennella, seeks judicial review of the decision of the Administrative Law Judge ("ALJ") finding that Plaintiff was no longer disabled as of October of 2011. In 2007, Plaintiff was determined to be disabled, but in April of 2013, in the decision that is the subject of this appeal, the ALJ determined that Plaintiff's disability ended on October 6, 2011 and that Plaintiff has not become disabled since that date. As the ALJ's decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.    Procedural Background

In early 2007, Plaintiff applied for supplemental security income and child's insurance benefits. (Tr. 129–139.) Plaintiff had cancer in her right leg, which required surgery to remove cancerous tumors. (Tr. 11, 36.) On April 3, 2007, in a decision that is not the subject of this appeal, Plaintiff was determined to be disabled as of November 21, 2006 ("Comparison Point Decision" or "CPD"). (Tr. 9.) In the CPD, it was determined that Plaintiff was unable to work due to soft tissue sarcoma of the right thigh, which met Listing 13.04B of Code of Federal Regulations, Title 20, Part 4, Subpart P, Appendix 1 ("Listings"). (Tr. 11.)

On October 6, 2011, the Regional Commissioner of the Social Security Administration notified Plaintiff that the Commissioner determined that she was no longer disabled as of October 6, 2011 and that her benefit payments would cease in December of 2011. (Tr. 9, 49–54.) At the time of the termination of her benefits, Plaintiff was 49 years old (Tr. 16) and had the following impairments: history of sarcoma of the right thigh with intermittent right lower extremity edema, gastroesophageal reflux disease ("GERD"), and unspecified connective tissue disease. (Tr. 11.)

The Disability Hearing Officer upheld this determination. (Tr. 9, 68–81.) Plaintiff filed a request for a hearing by an administrative law judge (Tr. 9, 89–90) and the ALJ held a hearing on March 12, 2013, at which Plaintiff appeared and testified. (Tr. 9, 25–46.)

Following the hearing, on April 23, 2013, the ALJ issued an unfavorable decision, finding that Plaintiff's disability ended as of October 6, 2011 and that Plaintiff had not become disabled again since October 6, 2011. (Tr. 9, 18.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–5.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## B.      Factual Background and the ALJ's Decision

Plaintiff was born in 1962 and was 49 years old at the time her disability was determined to have ended. (Tr. 16, 29.) Plaintiff has a seventh grade education (Tr. 29) and has past relevant experience as a restaurant hostess and waitress. (Tr. 16, 30–31.) At the hearing before the ALJ, Plaintiff contended that her disability is continuing because (1) her right leg continues to have poor circulation and numbness, which affects her ability to sit, stand, and walk, (2) her pain medications cause her to be fatigued, (3) her right hand is painful, which affects her ability to grip even small objects, and (4) her neck is stiff, which affects her ability to turn her head. (Tr. 36–39.)

The ALJ concluded that Plaintiff's disability ended as of October 6, 2011 and that Plaintiff has not become disabled again since October 6, 2011.  (Tr. 9, 18.)  The ALJ explained that the CPD is the most recent favorable medical decision finding Plaintiff disabled (Tr. 10 at ¶1) and that, at the time of the CPD, Plaintiff had soft tissue sarcoma of the right thigh, which met Listing 13.04B.  (Tr. 11 at ¶ 2.)  The ALJ found that Plaintiff did not engage in substantial gainful activity through October 6, 2011 (Tr. 11 at ¶ 3) and that since October 6, 2011, although Plaintiff had the following impairments—history of sarcoma of the right thigh with intermittent right lower extremity edema, GERD, and unspecified diffuse connective tissue disease—Plaintiff's combination of impairments have not equaled the severity of an impairment found in the Listings. (Tr. 11 at ¶¶ 4– 5.)

Next, the ALJ determined that, as of October 6, 2011, Plaintiff's medical condition had improved since the time of the CPD, enabling Plaintiff to perform substantial gainful activity as of October 6, 2011.  (Tr. 11 at ¶ 6.)  The ALJ first examined the medical evidence preceding the CPD, noting that Plaintiff's pathology reports showed that she had "an atypical lipomatous tumor with intramuscular invasion with negative margins," which required two surgeries to remove the tumor, one in 1991 and the second in November of 2006.  (Tr. 11 at ¶ 8, 210, 404–405.)  After her 2006 surgery, Plaintiff underwent radiation therapy.  (Tr. 11 at ¶ 8.)

Comparing the evidence preceding the CPD to recent medical records, the ALJ found that there was no evidence that Plaintiff's tumor or cancer in her leg has recurred.  (Tr. 12 at ¶ 8, 339, 550.)   Further, Plaintiff's treating physician prescribed Plaintiff a pain medication for her intermittent pain and numbness in her right thigh.  (Tr. 12 at ¶ 7, 342.)  The ALJ stated that such pain is likely due to Plaintiff's history of surgeries.  (Tr. 12.)  Relying on the results of a December 2011 consultative examination performed by Dr. Alvan Barber for Florida's Department of Health,

the ALJ found that Plaintiff: (1) was able to drive herself to the examination, get on an off of the examination table, and lie flat on the examination table, (2) walked with a limp, but did not use a device for assistance, (3) did not have edema or joint deformity, and (4) had strength in her lower extremities, "intact sensation," and an "essentially full range of motion." (Tr. 12 at ¶ 8, 420–428.) As to Plaintiff's GERD, the ALJ reviewed a March 2012 record by Dr. Pratima Deshmukh, Plaintiff's treating physician, stating that a change in medication was working "very well" and caused her acid reflux symptoms to cease. (Tr. 12 at ¶ 8, 525.) Finally, the ALJ considered a July 2012 examination performed by Plaintiff's rheumatologist, Dr. Sanjiv Kapil, during which Plaintiff did not report numbness, tingling, weakness, or swelling in her legs. (Tr. 12 at ¶ 8, 466–470.) The examination also showed that Plaintiff had a normal gait, strength, and sensation, and no edema. (*Id.*) Plaintiff was prescribed pain medication for her unspecified diffuse connective tissue disease and was recommended a course of physical therapy. (*Id.*)

The Plaintiff's medical improvement is related to her ability to do work, the ALJ concluded, because, as of October 6, 2011, Plaintiff's impairments no longer met Listing 13.04B. (Tr. 11 at ¶ 7.) However, the ALJ determined that Plaintiff continued to have severe impairments because they more than minimally limited Plaintiff's ability to perform basic, work-related activities. (Tr. 11 at ¶ 8.)

Next, because the ALJ found Plaintiff's impairments to be severe, the ALJ assessed Plaintiff's residual functional capacity ("RFC") as of the date Plaintiff's disability was determined to have ended and concluded that Plaintiff had the RFC to "perform light work." (Tr. 12–13 at ¶ 9.) The ALJ found that Plaintiff can occasionally bend, crouch, or stoop, and sit or stand at her option, but must avoid ladders, unprotected heights, the operation of heavy, moving machinery, kneeling, squatting, crawling, and operating foot controls. (*Id.*) The ALJ also found that Plaintiff's

work needs to be "low stress with no production limit" and involve simple and repetitive tasks. (*Id.*)

In so finding, the ALJ considered (1) Plaintiff's testimony regarding her pain and daily activities and (2) opinion evidence. (Tr. 12–16 at ¶ 9.) First, the ALJ considered Plaintiff's testimony that she has poor circulation and numbness in her right leg, pain in her fingers, and a stiff neck and can stand for thirty minutes, walk for fifteen minutes, and sit for fifteen to twenty minutes. (Tr. 13 at ¶ 9.) The ALJ also considered Plaintiff's testimony that she could attend to her personal care needs, prepare simple meals, shop, and drive. (*Id.*) The ALJ concluded that Plaintiff's testimony as to the "intensity, persistence, and limiting effects" of her symptoms was not credible to the extent it was inconsistent with his assessment of Plaintiff's RFC. (*Id.*)

Specifically, the ALJ first examined objective medical evidence. The ALJ found that although Plaintiff's sarcoma of the thigh has required two surgeries that caused residual tissue defects, Plaintiff's medical records from 2011 and 2012 show no evidence of "tumor recurrence or acute pathology." (*Id.*) Further, Plaintiff's GERD, the ALJ found, is controlled with medication. (*Id.*) Finally, as to Plaintiff's connective tissue disease, the ALJ found that the medical evidence showed that the disease was not "significant enough to preclude all work activity." (*Id.*) Overall, the ALJ concluded that the medical evidence shows that Plaintiff has no "significant functional limitations," and that her pain is controlled with medication. (*Id.*)

As to opinion evidence, the ALJ gave "significant weight" to the Disability Hearing Officer's conclusion that Plaintiff's condition improved and that she no longer met Listing 13.04B because it was consistent with Plaintiff's 2011 and 2012 MRI records. (Tr. 15, 68–76.) The ALJ afforded Dr. Deshmukh's, Plaintiff's treating physician, recommendation as to Plaintiff's work-related limitations "partial weight" because portions of his opinions were consistent with the ALJ's

RFC, but there was no showing of a medical necessity to support the physician's recommendation that Plaintiff elevate her leg.  (Tr. 15, 559.)  This recommendation, the ALJ found, appeared influenced by Plaintiff's subjective reports of symptoms and was unsupported by his own treating records or Plaintiff's other medical records.  (Tr. 15.)  Finally, the ALJ found the opinions of Dr. Barber, a consulting examining physician for Florida's Department of Health, as to the range of light work Plaintiff could perform to be consistent with the ALJ's RFC.  (Tr. 16 at ¶ 9.)  Thus, the ALJ concluded that Plaintiff "retains the ability, despite her impairments, to perform a range of light exertional work activity."  (*Id.*)

At the hearing, the ALJ asked the vocational expert whether a hypothetical claimant of Plaintiff's age (50 years old), education (seventh grade), and RFC could perform Plaintiff's past relevant work as a hostess or waitress.  (Tr. 41–42.)  Crediting the vocational expert's testimony, the ALJ found that, as of the date Plaintiff's disability was determined to have ended, Plaintiff was unable to perform her past relevant work as a hostess or waitress.  (Tr. 16 at ¶ 10.)  The ALJ did, however, conclude that Plaintiff is able to perform a significant number of jobs in the national economy.  (Tr. 17–18 ¶ 14.)  In so concluding, the ALJ relied on the vocational expert's testimony. (Tr. 17 at ¶ 14.)  At the hearing, the ALJ asked the vocational expert which, if any, jobs in the national economy could be performed by a 50 year-old hypothetical claimant with no skills, Plaintiff's work experience and education, and an ability to perform light, low-stress work that gives the claimant the opportunity to sit or stand, avoids kneeling, squatting, crawling, ladders, unprotected heights, and operating heavy machinery or foot controls, involves simple, repetitive tasks, and may involve crouching, bending, or stooping.  (Tr. 41–43.)  The vocational expert testified that such hypothetical claimant could perform the following jobs: a hospital product

assembler, gate attendant, or parking lot cashier.  (Tr. 42–43.)  Therefore, the ALJ determined that

Plaintiff's disability ended on October 6, 2011.  (Tr. 18 at ¶¶ 14–15.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be

unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical,

physiological, or psychological abnormalities that are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques.  *Id.* at §§ 423(d)(3), 1382c(a)(3)(D).

The termination of existing benefits upon a finding that the claimant is no longer disabled

must be supported by substantial evidence "that there has been medical improvement in the

claimant's impairments related to his ability to work, and the claimant is now able to engage in

substantial gainful activity."  *Klaes v. Comm'r, Soc. Sec. Admin.*, 499 F. App'x 895, 896 (11th Cir.

2012); *see* 42 U.S.C. § 423(f)(1).  A medical improvement means a "decrease in the medical

severity" of the claimant's impairment present at the time of the decision finding that claimant is

entitled to benefits, which show improvements "in the symptoms, signs and/or laboratory findings"

associated with the claimant's impairments.  20 C.F.R. § 404.1594(b)(1).

A finding of the claimant's medical improvement must be supported by a comparison of

(1) the medical evidence supporting the decision finding the claimant's entitlement to benefits and

(2) current medical evidence.  *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984); 20 C.F.R.

§ 404.1594(c)(1).  "Without such a comparison, no adequate finding of *improvement* could be

rendered."  *Vaughn*, 727 F.2d at 1043 (emphasis in original) (reversing and remanding for failure

to apply the proper legal standard, i.e., failure to compare the claimant's prior and current medical evidence to determine whether there was a medical improvement);  *Klaes*, 499 F. App'x at 897 (reversing and remanding because "[t]he ALJ did not mention, much less compare, the medical evidence of [claimant's] impairments . . . that was relied upon to make the original 2003 disability determination.").  This comparison is "necessary to avoid re-litigating the evidence presented in support of the initial administrative decision." *Vaughn*, 727 F.2d at 1043; *Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984) (reversing for failure to apply the proper legal standard because "the ALJ did not consider the issue of improvement but instead treated the case as though it were an original application for benefits").

The following analysis must be employed in making a determination of whether a disability is continuing, pursuant to Code of Federal Regulations, Title 20, Section 404.1594(f)(1)–(8): (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has an impairment or combination of impairments meeting or equaling the severity of an impairment found in the Listings; (3) whether there has been a medical improvement; (4) if there has been a medical improvement, whether it is related to the claimant's ability to do work in accordance with Code of Federal Regulations, Title 20, Section 404.1594(b)(1)-(4), which requires an evaluation of whether the claimant's RFC has increased based on the claimant's impairments at the time of the decision finding the claimant's entitlement to benefits; (5) if there has not been a medical improvement or if the medical improvement is unrelated to the claimant's ability to do work, whether any of the exceptions in Code of Federal Regulations, Title 20, Sections 404.1594(d) or (e)[1] apply; (6) if there has been a medical improvement that is related to the claimant's ability to

---

[1] If an exception found in Code of Federal Regulations, Title 20, Section 404.1594(e) applies, then the claimant's disability has ended.  20 C.F.R. § 404.1594(f)(5).  If none of the exceptions found in Code of Federal Regulations, Title 20, Sections 404.1594(d) or (e) apply, then the claimant's disability is continuing.  *Id.*

Case 6:15-cv-00148-JSS   Document 25   Filed 07/08/16   Page 9 of 27 PageID 675

do work or if an exception found in Code of Federal Regulations, Title 20, Section 404.1594(d) applies, whether the claimant's impairments are severe, according to Code of Federal Regulations, Title 20, Section 404.1521, and considering the effect of the impairments on the claimant's ability to function; (7) if the claimant's impairments are severe, whether the claimant can perform work claimant has done in the past based on an assessment of the claimant's RFC using claimant's current impairments; and (8) if the claimant cannot do the work the claimant has done in the past, whether the claimant can do other work given the claimant's RFC, age, education, and past work experience.  20 C.F.R. § 404.1594(f)(1)–(8).

If there is a medical improvement, determining whether it is related to the claimant's ability to do work requires assessing the claimant's RFC at the time of the decision finding the claimant's entitlement to benefits against the claimant's current RFC, which is based on the current severity of the impairments present at the time of the decision finding the claimant's entitlement to benefits. *Id.* at § 404.1594(c)(2).

A determination that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the Commissioner, even if

it finds that the evidence preponderates against the Commissioner's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  The Commissioner's failure to apply the correct law or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis mandates reversal.  *Id.*

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in discrediting Plaintiff's testimony regarding her pain; (2) the ALJ erred in his evaluation of the medical opinion evidence of record; and (3) the ALJ's assessment of Plaintiff's RFC was erroneous and therefore his conclusion that Plaintiff's condition improved, enabling her to work in jobs existing in significant numbers in the national economy, was not supported by substantial evidence.  For the reasons that follow, none of these contentions warrant reversal.

**A.      Credibility of Plaintiff's Pain Testimony**

Plaintiff contends that the ALJ failed to articulate adequate reasons for discounting the credibility of her testimony about the intensity and persistence of her symptoms, chiefly pain. (Dkt. 20 at 9.)  Plaintiff testified that she has numbness and poor circulation associated with her history of cancer in her leg, a stiff neck, and pain in her fingers.  (Tr. 13, 35–36.)  As a result, Plaintiff testified, she can lift only five pounds, can stand for thirty minutes, can walk for fifteen minutes, needs to elevate her leg after sitting for more than fifteen minutes, and has difficulty lifting and holding small objects because of pain in her fingers.  (*Id.*)  Plaintiff testified that her pain is alleviated with medication, but the medication causes her to be tired.  (Tr. 36–37.)  Finally, as to her daily activities, the ALJ noted Plaintiff's testimony that, although she could not do

household chores, she could bathe, dress, eat, prepare simple meals, shop, and drive without assistance.  (*Id.*)

Here, the ALJ determined that Plaintiff's impairments could reasonably be expected to produce her symptoms, but found Plaintiff's testimony regarding her symptom's persistence, intensity, and limiting effects not credible because objective medical evidence did not "provide a compelling basis for [Plaintiff's] statements regarding her inability to perform basic work activities." (Tr. 13–14.)  The ALJ reached his credibility determination by examining (1) objective medical evidence, including medical records from Plaintiff's treating physicians, (2) Plaintiff's testimony about to her daily activities, and (3) opinion evidence of Plaintiff's treating physician, a physician who examined Plaintiff at the request of Florida's Department of Health, and the Disability Hearing Officer.  (Tr. 12–16.)

First, the ALJ found Plaintiff's testimony unsupported by objective medical evidence.  As to Plaintiff's pain resulting from her cancer and associated operations, the ALJ noted that Plaintiff's cancer is in remission (Tr. 69) and MRI studies from 2011 and 2012 revealed no recurrence of tumors.  (Tr. 14.)  As to Plaintiff's GERD, the ALJ found that medical records showed that it was controlled by medication.  (*Id.*)  With regard to Plaintiff's connective tissue disease, which Dr. Kapil, Plaintiff's rheumatologist treated, the ALJ found that musculoskeletal studies failed to show evidence that the disease was "significant enough to preclude all work activity." (*Id.*)  Further, medical evidence revealed only moderate abnormalities in Plaintiff's musculoskeletal system, despite Plaintiff's testimony regarding pain of the musculoskeletal system, and that Plaintiff has a normal gait, functional range of motion, normal strength, and no significant motor, sensory, or reflex deficit.  (Tr. 14, 466–470.)

The ALJ found Plaintiff's testimony that her use of medications has helped her pain to be consistent with Dr. Deshmukh's report that Plaintiff was "doing fine" with prescription medication. (Tr. 14, 341–361.) Also, the ALJ considered that Plaintiff's medication regime had not increased over time, indicating that her physicians found it to be sufficient to control her symptoms, and that Plaintiff in fact did not follow through with Dr. Kapil's recommended course of physical therapy, indicating that Plaintiff's "symptoms may not be as limiting or serious as has been alleged." (Tr. 14) Plaintiff's testimony about the side effects of her medications, the ALJ found, was uncorroborated by the notes of her treating physicians. (*Id.*)

Second, the ALJ found Plaintiff's testimony less credible because Plaintiff's ability to perform daily activities was not limited to the extent her testimony about her pain would suggest because she tends to her personal hygiene, prepares simple meals, shops, drives, shops, and participates in activities. (Tr. 14–15.) Also, the ALJ noted that although Plaintiff testified that she did not contribute to household chores, she told the Disability Hearing Officer in 2012 that she did certain household chores, including laundry, dusting, and household cleaning. (Tr. 15, 69.) Thus, the ALJ concluded that Plaintiff's testimony regarding her total inability to work was unsupported by record evidence. (Tr. 15.)

Third, the ALJ found that opinion evidence did not support Plaintiff's testimony. (*Id.*) First, the ALJ gave "significant weight" to the Disability Hearing Officer's conclusion that Plaintiff's soft tissue sarcoma no longer meets Listing 13.04B, finding the conclusion corroborated by Plaintiff's MRI studies. (*Id.*) Second, the ALJ gave significant weight to Dr. Barber's determinations about Plaintiff's physical abilities—that Plaintiff "could stand for reasonable periods of time, sit without difficulty, [] use upper body movements and coordinated activities

with hands," and could not kneel, squat, or walk for lengthy periods—consistent with the ALJ's RFC, despite Dr. Barber not being specific in "defining specific limitations."  (Tr. 16, 420–426.)

Finally, the ALJ gave partial weight to the opinions of Plaintiff's treating physician, Dr. Deshmukh.  Specifically, Dr. Deshmukh found in 2011 that Plaintiff could not stand for more than thirty minutes (Tr. 406), but in 2012, he found that Plaintiff could sit for six hours and stand or walk for less than two hours.  (Tr. 15, 453.)   The ALJ determined that Dr. Deshmukh's recommendation that Plaintiff, if working, would need the option to shift her positioning at will (Tr. 453) to be consistent with the ALJ's RFC.  (Tr. 15).   However, Dr. Deshmukh's recommendation that Plaintiff elevate her leg (Tr. 559), based on Plaintiff's testimony that she sat with her leg elevated, was not supported by any "clinical findings" of the necessity to elevate her leg, including the fact that Plaintiff had no consistent or ongoing edema.  (Tr. 15.)   Also, in Plaintiff's 2013 examination by Dr. Kapil, Plaintiff did not report numbness, tingling, or weakness in her extremities.  (Tr. 15, 455–458.)   The ALJ concluded that Dr. Deshmukh's reports "were solicited by" Plaintiff, appeared influenced by her reports of her pain and symptoms, and were not corroborated by his own treating records or the other medical evidence.  (Tr. 15.)

When determining whether a claimant is disabled, in addition to objective record evidence, the ALJ must consider the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529.  To evaluate whether a claimant has established disability through the claimant's testimony of pain and other subjective symptoms, the ALJ must apply the following test: first, whether there is evidence of an underlying medical condition and, second, whether there is objective medical evidence substantiating the severity of the pain from the condition or whether

the medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see* 20 C.F.R. § 404.1529.

If an ALJ determines that the claimant's medical condition could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms, including pain, to determine their effect on the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776-77 (11th Cir. 2010). The ALJ considers all available evidence, including objective medical evidence, statements from the claimant, treating physicians, and non-treating physicians, and medical opinions. 20 C.F.R. § 404.1529(c)(1)–(2). In addition to objective medical evidence, the ALJ considers other information claimant provides, such as (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant took to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant received for relief of pain or other symptoms; and (6) any measures the claimant personally used to relieve pain or other symptoms. *Id.* at §§ 404.1529(c)(3), 416.929(c)(3). The ALJ evaluates a claimant's testimony as to the "intensity, persistence, and limiting effects" of the claimant's symptoms against all other evidence and considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [claimant's] statements and the rest of the evidence." *Id.* at § 404.1529(c)(4). In sum, a claimant's symptoms, including pain "will be determined to diminish [claimant's] capacity for basic work activities to the extent that [claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

An ALJ's determination of the credibility of a claimant's testimony regarding subjective pain is entitled to deference and a reviewing court will not disturb a clearly-articulated credibility finding with substantial supporting evidence in the record.  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  Thus, if an ALJ discredits a claimant's testimony, the ALJ must articulate, explicitly and adequately, reasons for not crediting the testimony.  *Holt*, 921 F.2d at 1223–1224.  "Implicit in this rule is the requirement that such articulation of reasons . . . be supported by substantial evidence."  *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (finding the ALJ's articulation of reasons for discrediting a claimant's testimony supported by substantial evidence because the ALJ considered the claimant's daily activities, frequency of symptoms, and types and dosages of medication).  If an ALJ fails to adequately explain the reasons for discrediting a claimant's testimony, the testimony must be accepted as true as a matter of law.  *Hale*, 831 F.2d at 1012.

As the reviewing Court, "[t]he question is not . . . whether ALJ could have reasonably credited [claimant's pain] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938-39 (11th Cir. 2011) (finding that substantial evidence supported the ALJ's decision to discredit claimant's pain testimony because the testimony was inconsistent with claimant's testimony regarding his daily activities and with the records from his treating and examining physicians, showing claimant was capable of doing light work); *Dyer*, 395 F.3d at 1212 (reversing the district court's reversal of the ALJ because "the district court improperly reweighed the evidence and failed to give substantial deference to the Commissioner's decision" to discredit claimant's pain testimony).

### 1.      Plaintiff's Daily Activities

First, Plaintiff contends that the ALJ erred in his conclusion that Plaintiff's testimony regarding her pain was not credible because it was not harmonious with Plaintiff's testimony regarding her daily activities.  (Tr. 14–15.)  Specifically, Plaintiff argues that the ALJ did not fairly characterize Plaintiff's testimony regarding her daily activities and did not consider the limited nature of her daily activities.  (Dkt. 20 at 10–13.)

In evaluating the persistency and intensity of Plaintiff's symptoms, the ALJ may consider all available evidence, including Plaintiff's testimony regarding her daily activities.  20 C.F.R. § 404.1529(c)(3)(i); *Crow v. Comm'r, Soc. Sec. Admin.*, 571 F. App'x 802, 808 (11th Cir. 2014) (finding that the ALJ made a "clearly articulated credibility finding" when the ALJ considered claimant's daily activities to determine that claimant's testimony was not credible);  *Leiter v. Comm'r of Soc. Sec. Admin.*, 377 F. App'x 944, 948 (11th Cir. 2010) (same); *Symonds v. Astrue*, 448 F. App'x 10, 13 (11th Cir. 2011) (same).  Therefore, the ALJ's consideration of Plaintiff's testimony regarding her daily activities was proper.  20 C.F.R. § 404.1529(c)(3)(i); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) (finding that the ALJ "properly considered a variety of factors, including the claimant's . . . daily activities . . . in making the finding about pain.").

Further, the ALJ's credibility determination was supported not only by his findings as to Plaintiff's testimony regarding her daily activities, but also by objective medical evidence and opinion evidence.  (Tr. 12–16.)  Therefore, Plaintiff's argument is unwarranted because the ALJ articulated his reasons for discrediting Plaintiff's testimony about her pain and cited to ample objective medical evidence and opinion evidence, in addition to Plaintiff's testimony regarding her daily activities, to support his determination.  As discussed above, the ALJ determined that the medical evidence did not support Plaintiff's testimony regarding her pain because (1) her cancer

is in remission (Tr. 69), her GERD is controlled by medication (Tr. 14), and her musculoskeletal studies showed no more than moderate abnormalities, and a normal gait, range of motion, strength, and reflexes.  (Tr. 14, 466–470.)  Further, opinion evidence showed that Plaintiff was able to sit and stand for reasonable periods of time (Tr. 420–426) and that her soft tissue sarcoma no longer met Listing 13.04B.  (Tr. 15.)

## 2.  Plaintiff's Source of Symptoms

Plaintiff next argues that the ALJ's credibility determination was erroneous because the ALJ, based on Plaintiff's treating physician's notes, stated that Plaintiff's pain and numbness in her right thigh may be attributable to her history of surgeries.  (Dkt. 20 at 13–14.)  Plaintiff argues that the ALJ cannot consider the *cause* of Plaintiff's symptoms, but instead can only consider whether she was suffering from the symptoms she claims.  (*Id.*)  Contrary to Plaintiff's assertion, when evaluating the intensity and persistence of a claimant's symptoms, the ALJ may consider factors that precipitate the claimant's symptoms.  20 C.F.R. § 404.1529(c)(3) ("The information that [claimant], [claimant's] treating or nontreating source, or other persons provide about [claimant's] pain or other symptoms . . . e.g., what may precipitate or aggravate [claimant's] symptoms . . . is also an important indicator of the intensity and persistence of [claimant's] symptoms.").  Also, the ALJ found that Plaintiff's impairments could reasonably produce her symptoms, but concluded that her testimony about the persistence and intensity of her symptoms was not credible.  (Tr. 13.)  Thus, the ALJ did not base his credibility finding on his statement regarding the source of Plaintiff's pain and numbness in her right thigh, but instead articulated that his credibility determination was based on objective evidence, Plaintiff's testimony regarding her daily activities, and opinion evidence.

### 3.   Plaintiff's Medication

Plaintiff contends that the ALJ's conclusion that there was no evidence to suggest that Plaintiff's prescription, Lortab, was not inadequate to relieve her pain is "simply not true," citing to records from treating physicians regarding Plaintiff's other prescriptions for pain medications and Plaintiff's reports of pain.   (Dkt. 20 at 14.)

Essentially, Plaintiff requests that this Court re-weigh the evidence regarding the effectiveness of Plaintiff's medications.   The ALJ properly considered the effectiveness of Plaintiff's medications when evaluating her testimony regarding the persistence and intensity of her pain.   20 C.F.R. §§ 404.1529(c)(3)(iv); *Harwell*, 735 F.2d at 1293 (finding that the ALJ "properly considered a variety of factors, including the claimant's use of pain-killers . . . in making the finding about pain.").

The ALJ reviewed objective medical evidence from Plaintiff's treating physicians and explained that this evidence did not "suggest impairments that are more limiting" than the ALJ determined. (Tr. 14.) Thus, the ALJ articulated his reasons for discrediting Plaintiff's testimony, which the ALJ supported with objective evidence of Plaintiff's treatment with medications.

### 4.   Plaintiff's Failure to Follow Recommended Course of Treatment

Next, Plaintiff argues that the ALJ considered that Plaintiff failed to follow a course of physical therapy recommended by Dr. Kapil without confirming this with Plaintiff at the hearing. (Tr. 14, 467.) Thus, Plaintiff argues, this portion of the ALJ's decision is merely conjecture. (Dkt. 20 at 16–17.)

A claimant's refusal "to follow prescribed medical treatment without a good reason will preclude a finding of disability." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988); *see* 20 C.F.R. § 416.930.  "In order to deny benefits on the ground of failure to follow prescribed

- 18 -

treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored." *Dawkins*, 848 F.2d at 1213 (reversing an ALJ's credibility determination because it was based solely on claimant's noncompliance with prescribed treatment, but did not consider whether claimant had good reason to not comply). However, unless an ALJ's finding that a claimant is not disabled is based *significantly* on a claimant's noncompliance with treatment, the ALJ's decision will not constitute reversible error. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (finding that an ALJ's failure to consider why a claimant did not follow suggested treatment was not reversible error because the ALJ's determination "was not significantly based on a finding of noncompliance" and was based primarily on other evidence); *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011) ("[I]f the claimant's failure to follow medical treatment is not one of the principal factors in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay [for treatment] will not constitute reversible error."); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012) ("Nonetheless, reversible error does not appear where the ALJ primarily based her decision on factors other than non-compliance, and where the claimant's non-compliance was not a significant basis for the ALJ's denial of disability insurance benefits.").

Here, unlike in the decision on appeal in *Dawkins*, the ALJ's credibility determination was not based *solely* on his finding that Plaintiff's records did not show that Plaintiff followed Dr. Kapil's recommendation of physical therapy because the ALJ articulated that he based his credibility determination on Plaintiff's testimony regarding her daily activities, Plaintiff's use of medication, opinion evidence, and objective medical evidence.  (Tr. 12–16.)  Because the ALJ's credibility determination is articulated and supported by substantial evidence, Plaintiff's contention does not warrant reversal.  (*See* Tr. 69, 420–426, 466–470.)

### 5.     Objective Evidence

Finally, Plaintiff argues that the ALJ did not apply the proper standard when he concluded that "the objective evidence fails to provide a compelling basis for the claimant's statements regarding her inability to perform basic work activities."   (Tr. 14.)   Contrary to Plaintiff's contention, the ALJ followed the proper analysis because when, as here, a claimant's impairments "could reasonably be expected to produce [claimant's] symptoms, such as pain," the ALJ "must then evaluate the intensity and persistence of [claimant's] symptoms" to "determine how [claimant's] symptoms *limit [claimant's] capacity for work.*"   20 C.F.R. § 404.1529(c)(1) (emphasis added); 20 C.F.R. § 404.1529(c)(4) (a claimant's "symptoms, including pain, will be determined to diminish [claimant's] capacity for basic work activities to the extent that [claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

Further, Plaintiff contends that the ALJ's finding that objective evidence does not support Plaintiff's testimony about her symptoms is incorrect because there is record evidence showing that Plaintiff's past surgeries have left Plaintiff with permanent damage, that Plaintiff has cervical "spurring," and that Plaintiff's treating physicians did not doubt Plaintiff's reports of pain.  (Dkt. 20 at 17–18.)  Again, this Court must consider whether the ALJ adequately articulated his reasons for discrediting Plaintiff's testimony about her symptoms and pain and whether his reasons are supported by substantial evidence and must not re-weigh the evidence.  *Dyer*, 395 F.3d at 1212. Because the ALJ articulated his reasons for discrediting Plaintiff's testimony, which were supported by substantial evidence, Plaintiff has not demonstrated reversible error.

As explained, the ALJ cited to medical evidence when articulating his reasons for discrediting Plaintiff's testimony.  Specifically, the ALJ acknowledged that although Plaintiff has

a history of soft tissue sarcoma, her 2011 and 2012 records show that she has no recurrence of cancerous tumors.  (Tr. 69.)  This evidence was buttressed by opinion evidence that Plaintiff's condition had improved so that she no longer met Listing 13.04B.   (Tr. 68–76.)  Her GERD, the record shows, is controlled by medication.  (Tr. 14.)  Studies of Plaintiff's musculoskeletal system revealed normal range of motion, gait, and strength.  (Tr. 466–470.)

## B.   Weight of Examining Physicians' Opinions

Plaintiff next argues that the ALJ failed to give treating physicians' opinions proper weight and instead gave significant weight to the opinion of a one-time consulting examiner.  (Tr. 18.) Specifically, Plaintiff argues that if the ALJ credited Dr. Deshmukh's March 2013 opinion that Plaintiff should be permitted to elevate her leg to chair level after ten to fifteen minutes of being seated (Tr. 559), then the ALJ's decision would have been different because the vocational expert testified that a person with such needs would have difficulty working at a desk or booth level. (Dkt. 20 at 19; Tr. 43–44.)

In giving Dr. Deshmukh's post-hearing recommendation that Plaintiff elevate her leg after sitting for ten to fifteen minutes (Tr. 559), "partial weight," the ALJ found that objective medical evidence did not "support the medical necessity of leg elevation."  (Tr. 15.)  Specifically, the ALJ found that although Plaintiff intermittently complained of edema in her extremities, she had no consistent, ongoing edema.  (Tr. 15, 347, 377, 379, 424, 457, 495.)  Also, when Dr. Kapil examined Plaintiff in January 2013, Plaintiff denied that her extremities were numb, weak, swollen, or tingled and Dr. Kapil and the consulting examining physician reported that her sensations and strength were normal.  (Tr. 424, 455–458.)  In giving Dr. Deshmukh's recommendation only partial weight, the ALJ also explained that his reports "were solicited by" Plaintiff, influenced by

Plaintiff's "exaggerated" reports of pain, and unsupported by his own treating records and other objective medical evidence. (Tr. 15.)

A treating physician's testimony is "given substantial or considerable weight unless good cause is shown to the contrary" and an ALJ must specify the weight given to the treating physician's opinion. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). An ALJ's failure "to clearly articulate the reasons for giving less weight to the opinion of a treating physician" is reversible error. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see* 20 C.F.R. § 404.1527(c)(2) (stating that more weight is given to a claimant's a treating physician if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."). Good cause for giving a treating physician's opinion less weight "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

Here, although the ALJ found "certain aspects" of Dr. Deshmukh's opinions to be consistent with the ALJ's RFC, including Dr. Deshmukh's assessment that Plaintiff could stand for thirty minutes and needed the opportunity to shift positions (Tr. 406, 453–454), the ALJ gave Dr. Deshmukh's recommendation that Plaintiff elevate her leg only "partial weight." (Tr. 15.) The ALJ noted that Dr. Deshmukh gave this recommendation on March 14, 2013 (Tr. 559), two days after Plaintiff's testimony about her need to elevate her leg at the March 12, 2013 hearing before the ALJ. (Tr. 15.) Further, Dr. Deshmukh's recommendation is conclusory as he does not refer to his treatment records or explain his opinion. *Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 512 (11th Cir. 2011) (finding that "the ALJ had good cause not to give controlling weight" to

a treating physician's opinions because they were "conclusory," did not refer to his treatment records, did not "adequately explain his opinions," and in fact conflicted with his treatment records).

As set forth above, the ALJ supported his giving Dr. Deshmukh's recommendation partial weight by citing to (1) the lack of evidentiary support that Plaintiff had ongoing edema or that Plaintiff's extremities were weak or numb and (2) the recommendation's inconsistency with Dr. Deshmukh's own records.  Thus, the ALJ sufficiently articulated "good cause" for giving Dr. Deshmukh's recommendation only partial weight.  *Phillips*, 357 F.3d at 1241.

Additionally, Plaintiff argues that the ALJ erroneously gave significant weight to the opinions of Dr. Barber, a consulting examining physician.  (Dkt. 20 at 22–24.)  Specifically, the ALJ described Dr. Barber's December 2011 opinion, in which Dr. Barber found that Plaintiff could stand "for reasonable periods of time," "sit without difficulty," and use her hands, but could not kneel, squat, or walk "for long periods of time."  (Tr. 16, 420–428.)  The ALJ noted that although Dr. Barber's assessment of Plaintiff's functional ability was "quite vague in defining specific limitations," it was consistent with the ALJ's RFC and record evidence regarding Plaintiff's physical limitations and was made after Dr. Barber comprehensively examined Plaintiff.  (Tr. 16.)

When determining the weight to give a medical opinion, an ALJ considers the following factors: (1) whether the physician performed an examination, (2) the treatment relationship, including the length, nature, and extent of the relationship, (3) the amount of explanation and medical support the physician provides in reaching an opinion, (4) how consistent the physician's opinion is with the entire record, (5) whether the treating physician is a specialist, and (6) any other factors raised by a claimant.  20 C.F.R. § 404.1527(c)(1)–(6).  Here, the ALJ, in giving Dr. Barber's opinions significant weight, properly considered that Dr. Barber's opinions were based on a

comprehensive physical examination and were consistent with the entire record and the ALJ's RFC assessment.  (Tr. 16.)  Because the ALJ's apportionment of weight to Dr. Barber's opinions is articulated with citation to substantial support in the record, Plaintiff's contention is unavailing.

**C.**     **The ALJ's Assessment of Plaintiff's RFC and Finding of Medical Improvement**

Finally, Plaintiff argues that, because the ALJ's RFC "is the product of multiple errors," the ALJ's conclusion that Plaintiff experienced a medical improvement allowing her to perform work existing in significant numbers in the national economy cannot be affirmed.  (Dkt. 20 at 24–25.)  Plaintiff's contention is that the ALJ erred in his assessment of Plaintiff's RFC because the ALJ erred by discounting Plaintiff's pain testimony and Plaintiff's treating physician's recommendation.  Because the RFC is based on error, Plaintiff argues, the hypothetical the ALJ posed to the vocational expert did not properly encompass Plaintiff's impairments.  (*Id.*)  Therefore, Plaintiff argues, the vocational expert's testimony regarding jobs Plaintiff can perform that exist in the national economy was erroneous.  (*Id.*)

A claimant's RFC is "the most [claimant] can still do despite [claimant's] limitations" and is assessed "based on all the relevant evidence in [claimant's] case record."  20 C.F.R. § 404.1545(a)(1); *Phillips*, 357 F.3d at 1238.  When the ALJ determines that a claimant cannot perform past relevant work, then the Commissioner must produce evidence that claimant is able to do other jobs existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience.  20 C.F.R. § 404.1560(c).  The burden then shifts to the claimant to show that the claimant "is unable to perform the jobs that the Commissioner lists." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "[T]he Commissioner's preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a [vocational expert]."  *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).  The ALJ must "introduce

independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform" and a vocational expert's testimony constitutes substantial evidence when the ALJ poses a hypothetical question to the vocational expert "which comprises all of the claimant's impairments." *Wilson*, 284 F.3d at 1227; *Foote*, 67 F.3d at 1562-63 ("Absent testimony from a vocational expert, the ALJ's conclusion that Appellant's pain limitations do not significantly compromise her ability to perform a full range of sedentary work is not supported by substantial evidence.").

The ALJ determined that Plaintiff, despite her impairments, retains the RFC to "perform a range of light exertional work activity" that is limited by exertional and non-exertional impairments. (Tr. 16 at ¶ 9, 41–43.) In assessing Plaintiff's RFC, the ALJ considered Plaintiff's testimony about her symptoms, including pain. (Tr. 13.) As discussed above (*see supra* §§ A–B), the ALJ concluded that Plaintiff's testimony regarding the persistence, intensity, and limiting effects of her symptoms was not credible based on objective medical evidence, Plaintiff's testimony about her daily activities, and opinion evidence of Plaintiff's treating physician, Dr. Deshmukh, and a consulting examining physician, Dr. Barber. (Tr. 13–16.)

As determined above, the ALJ articulated his reasons for (1) discounting the credibility of Plaintiff's testimony as to her pain, (2) giving the recommendation of Plaintiff's treating physician, Dr. Deshmukh, partial weight, and (3) giving the opinions of Dr. Barber, a consultative examining physician, significant weight. (*See supra* §§ A–B.) Thus, contrary to Plaintiff's assertion, the ALJ's assessment of Plaintiff's RFC is not a product of error. Accordingly, the ALJ's conclusion that Plaintiff had the RFC to perform jobs existing in significant numbers in the national economy is supported by substantial evidence, namely the vocational expert's testimony. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (explaining that an ALJ's hypothetical

only needs to include a claimant's impairments and "not each and every symptom of the claimant" if the ALJ finds the symptoms to be unsupported by the medical record); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("In any event, the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

Further, the ALJ's conclusion that Plaintiff's condition improved such that she is no longer disabled is supported by substantial evidence. To support a finding of medical improvement, the ALJ must "actually compare" the medical records supporting the determination that a claimant was disabled against current medical evidence. *Freeman*, 739 F.2d at 566. Here, the ALJ reviewed Plaintiff's medical records supporting the CPD regarding her cancerous tumor in her right leg, her surgeries to remove the tumor, and her radiation therapy. (Tr. 11.) The ALJ compared this evidence to 2011 and 2012 MRI studies, which showed no evidence of tumor recurrence or changes, other than post-surgical changes, to determine that Plaintiff's condition has improved since the time of the CPD. (Tr. 12.) Therefore, the ALJ's determination of a medical improvement was supported by substantial evidence because he properly compared medical evidence preceding the CPD against current medical evidence. Plaintiff's final contention, therefore, does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1.      The decision of the Commissioner is **AFFIRMED**.

2.      The Clerk of Court is directed to enter final judgment in favor of the Commissioner

and close the case.

**DONE** and **ORDERED** in Tampa, Florida on July 8, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record